IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

VANESSA ROMERO,

    Plaintiff,

v.                                                                                             1:22-cv-00351-JB-JMR

KILOLO KIJAKAZI, Acting Commissioner
of the Social Security Administration,

    Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on plaintiff Vanessa Romero's Opposed Motion to Reverse or Remand (Doc. 23), which was fully briefed on May 8, 2023. *See* Docs. 37–39. Pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (b)(3), the Honorable James O. Browning referred this matter to me for a recommended disposition. Doc. 36. Having meticulously reviewed the record, read the briefing, and being fully advised in the premises, I find that the Administrative Law Judge ("ALJ") failed to "meaningfully consider" the treatment records of Ms. Romero's primary healthcare provider in evaluating her symptom testimony. I therefore recommend that the Court GRANT Ms. Romero's motion IN PART and remand this case to the Commissioner for further proceedings.

**I.**     **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports

---

[1] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481, as it is in this case.

the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

**II.    Applicable Law and Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process.  20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work."  20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61.  If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience.  *Id.*

### III.  Background and Procedural History

Ms. Romero was born in 1978, completed two years of college, and worked as a salesperson, a massage therapist, and a colon hydro therapist.  AR 295, 338–39.[3]  Ms. Romero filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on October 27, 2017—alleging disability since August 9, 2016, due to post-traumatic stress disorder ("PTSD"), anxiety, hypothyroidism, Raynaud's disease, "Hypsonado Tropic," amenorrhea, functional dyspepsia, hyperlipidemia, neuralgia, and bipolar disorder.  AR 295–305,

---

[2] Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] Documents 16-1 through 16-12 and 35-1 through 35-4 comprise the sealed Administrative Record ("AR").  When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

338. The Social Security Administration ("SSA") denied her claims initially on August 17, 2018. AR 188–91. The SSA denied her claims on reconsideration on July 11, 2019. AR 194–99. Ms. Romero requested a hearing before an ALJ. AR 200. On July 1, 2021, ALJ Lillian Richter held a hearing. AR 36–89. ALJ Richter issued her unfavorable decision on October 28, 2021. AR 7–30.

The ALJ found that Ms. Romero met the insured status requirements of the Social Security Act through December 31, 2023. AR 12. At step one, the ALJ found that Ms. Romero had not engaged in substantial gainful activity since August 9, 2016, her alleged onset date. *Id.* At step two, the ALJ found that Ms. Romero had the following severe impairments: degenerative disc disease of the cervical spine with impingement, cervical spondylosis, cervicalgia, facet syndrome, degenerative disc disease of the lumbar spine, chronic back pain, fibromyalgia, myofascial pain, chronic cough, dyspnea, lupus, and depressive disorder. AR 13. The ALJ found that Ms. Romero's Epstein Barr virus, endometritis, chronic interstitial cystitis, Lyme disease, hypothyroidism, pneumonia, spirochetal infection, invasive candidiasis, urinary tract infection, hematemesis, ovarian cyst, gastroesophageal reflux disorder, and anal fissure were nonsevere impairments. *Id.*

At step three, the ALJ found that none of Ms. Romero's impairments, alone or in combination, met or medically equaled a Listing. AR 13–15. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Romero's RFC. AR 15–22. The ALJ found Ms. Romero had the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally stoop, kneel, crouch, crawl, and balance; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; and should avoid exposure to extreme heat, extreme cold, unprotected heights, and hazardous machinery. The claimant can frequently handle, finger and feel bilaterally and can frequently reach bilaterally in all directions. The claimant can perform simple

routine work; can have occasional interaction with supervisors, coworkers, and members of the public; can make simple work-related decisions in a workplace with few changes in the routine work setting; and can remain on task for two hours at a time.

AR 15.

At step four, the ALJ found that Ms. Romero could not perform her past relevant work as a massage therapist/masseuse. AR 22. The ALJ found Ms. Romero not disabled at step five because she could perform jobs that exist in significant numbers in the national economy—such as table worker, nut sorter, and final assembler. AR 23. Ms. Romero requested review by the Appeals Council. AR 286–88. On March 9, 2022, the Appeals Council denied the request for review. AR 1–6. Ms. Romero timely filed her appeal to this Court on May 6, 2022. Doc. 1.[4]

## IV. Ms. Romero's Claims

Ms. Romero raises two arguments for reversing and remanding this case: (1) the ALJ erred by failing to "meaningfully consider" the treatment records of her primary healthcare provider in evaluating her symptom testimony; and (2) remand is required because the Administrative Record is incomplete. Doc. 23 at 16–17. I agree that the ALJ failed to "meaningfully consider" the treatment records of Ms. Romero's primary healthcare provider, Certified Nurse Practitioner ("CNP") Philomena Marcus, and I recommend the Court remand on this basis. I recommend the Court find any error connected to the delay in completing the Administrative Record to be without merit.

---

[4] A claimant has sixty days to file an appeal. The sixty days begins running five days after the decision is mailed. 20 C.F.R. §§ 404.981, 416.1481; *see also* AR 2.

V.   Analysis

### a. The ALJ failed to "meaningfully consider" the treatment records of Ms. Romero's primary healthcare provider in evaluating her symptom testimony.

Ms. Romero argues that the ALJ failed to "meaningfully consider all the important evidence in evaluating [her] symptom testimony." Doc. 23 at 16. Specifically, she asserts that the ALJ erred in her assessment of CNP Marcus's treatment records because the ALJ "summarily disregard[ed] her findings" for reasons that are not supported by substantial evidence. *Id.* Finally, she asserts that if the ALJ had meaningfully considered CNP Marcus's treatment records, "the outcome would have been different." *Id.* at 17. The Commissioner argues that there is no basis for remand because the ALJ appropriately assessed Ms. Romero's subjective symptom testimony using the regulatory factors, and supported her findings with substantial evidence. Doc. 37 at 5–9. For the reasons explained below, I agree with Ms. Romero.

When evaluating a claimant's symptoms, the ALJ must use the two-step framework set forth in 20 C.F.R. §§ 404.1529, 416.929. First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b). Second, after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled. 20 C.F.R. §§ 404.1529(c), 416.929(c). At the second step, the ALJ considers "all of the available evidence" about how symptoms affect the claimant—including a claimant's statements about the intensity, persistence, and limiting effects of her symptoms; the objective medical evidence; information from medical sources about the claimant's pain or other symptoms; and information from nonmedical sources about the

claimant's pain or other symptoms. *Id.* "The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

In evaluating a claimant's subjective symptom evidence and other matters, an ALJ must discuss not only "the evidence supporting [her] decision," but also "the uncontroverted evidence [s]he chooses not to rely upon, as well as significantly probative evidence [s]he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). Along these lines, "[i]t is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (quotation and citation omitted). Likewise, an ALJ is not permitted to "mischaracterize or downplay evidence to support her findings." *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018) (unpublished) (citing *Talbot v. Heckler*, 814 F.2d 1456, 1463–64 (10th Cir. 1987)). Failure to follow these controlling legal standards is grounds for remand. *See, e.g., Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).

At the hearing, Ms. Romero provided detailed testimony regarding her symptoms. She testified that she suffered from constant, severe, throbbing pain in her neck; back pain; whole body aches; frequent headaches and migraines. AR 43–45. She testified that due to her Raynaud's syndrome, her hands get discolored, become numb, and frequently lock up. AR 43. She testified that this caused difficulties with lifting, using a pen or pencil, typing, and texting. AR 43, 51–52. Ms. Romero testified that she suffers from daily fatigue, which she rated as an 8 out of 10. AR 52–53. She testified that she suffers from gastritis, GERD, rectal bleeding, and frequent diarrhea, which requires her to wear incontinence products. AR 45–46. She testified

7

that she could sit upright in an office chair for a maximum of five minutes at a time due to pain in her back, neck, and rectum.  AR 53.  She testified that she could stand for a maximum of five to seven minutes.  AR 54.

The ALJ accurately summarized Ms. Romero's reported symptoms.  *See* AR 16.  The ALJ then concluded—at step one of the symptom evaluation process—that Ms. Romero's medically determinable impairments could "reasonably be expected to cause the alleged symptoms."  AR 16; 20 C.F.R. §§ 404.1529(b), 416.929(b). At step two of the symptom evaluation process, however, the ALJ found that Ms. Romero's statements "concerning the intensity, persistence, and limiting effects of these symptoms" were not entirely consistent with the evidence in the record.  AR 16.

In reaching this conclusion at step two of the symptom evaluation process, the ALJ failed to adequately consider the objective medical evidence and treatment records from Ms. Romero's primary treating healthcare provider, CNP Marcus.  *See* 20 C.F.R. §§ 404.1529(c), 416.929(c) (ALJ must consider "all of the available evidence" including objective medical evidence and other information from medical sources about the claimant's pain or other symptoms).  The ALJ impermissibly picked and chose portions of CNP Marcus's reports that were "favorable to [the ALJ's] position while ignoring other evidence." *Carpenter*, 537 F.3d at 1265.  In addition, a review of the record shows that the ALJ erred by mischaracterizing CNP Marcus's reports.

8

*Bryant*, 753 F. App'x at 41.  I recommend that the Court remand, as these errors likely impacted the ALJ's subjective symptom analysis and RFC determination.[5]  See Byron, 742 F.2d at 1235.

The ALJ noted that CNP Marcus had treated Ms. Romero since at least 2015 for a variety of complaints including chronic back pain, mycoplasma pneumonia, malaise, fatigue, spirochetal infection, primary fibromyalgia syndrome, generalized aches and pains, chronic pain syndrome, various vitamin deficiencies, hypothyroidism, Epstein Barr virus disease, nausea, vomiting, and diarrhea.  AR 16–17.  The ALJ noted that CNP Marcus had prescribed short term medications for transitory problems; had consistently prescribed oxycodone every month for pain since at least 2015.  AR 17.  The ALJ then summarized CNP Marcus' March 2021 examination of Ms. Romero wherein CNP Marcus noted that Ms. Romero appeared chronically ill, that her recent and remote memory were abnormal, and that she had abnormal motor strength.  AR 17, citing AR 1405.  The ALJ then provided only a single paragraph of analysis explaining how she considered CNP Marcus's voluminous treatment records in analyzing Ms. Romero's symptoms and in determining her RFC:

> Of note, review of Nurse Marcus' treatment notes shows that many of the abnormal findings, such as chronically ill, abnormal memory, and abnormal motor strength, have been exactly the same for years, suggesting that they may be automatically propagated by a computer program, with new complaints sometimes inserted (See, e.g., B28F/64-65 from March 2021; B28F/312 from October 2019; and B14F/8 from October 2017).  In addition, Nurse Marcus' abnormal findings, particularly that of appearing chronically ill, are not consistent with those of other providers, who generally described her as appearing healthy and in no acute distress.

---

[5] The Commissioner does not acknowledge any legal error, much less argue that such error was harmless. *See* Doc. 37.  In any case, the Court does not find the ALJ's factually faulty discussion of CNP Marcus's treatment records to be harmless. *See Allen v. Barnhart,* 357 F.3d 1140, 1145 (10th Cir. 2004) (harmless error only applies where, "based on material the ALJ did at least consider (just not properly), [the Court] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way").

AR 17.

The reasons the ALJ gives for discounting CNP Marcus's abnormal findings are not supported by the record. First, the ALJ's suggestion that portions of CNP Marcus's treatment notes are computer-automated—thus, inaccurate or outdated—is supposition and not supported by the evidence. The ALJ incorrectly claims that CNP Marcus's treatment notes indicating that Ms. Romero is chronically ill, has abnormal memory, and abnormal motor strength have been "exactly the same for years." AR 17. The ALJ cherry picked three records from CNP Marcus's voluminous treatment records to support her claim that the abnormal findings have been "exactly the same for years" while impermissibly ignoring records that state the opposite. *See Carpenter*, 537 F.3d at 1265. I closely reviewed all CNP Marcus's treatment records from August 1, 2017 through March 19, 2021.[6] Contrary to the ALJ's claim, CNP Marcus's findings about Ms. Romero's memory have not been "exactly the same for years." While CNP Marcus did often note that both Ms. Romero's recent and remote memory were "abnormal," CNP Marcus also found on a number of examinations that Ms. Romero's recent memory was "normal." *See* AR 946, 1074, 1094, 1161, 1183, 1190, 1480, 1613, 1633. And CNP Marcus further found Ms. Romero's remote memory to be normal on some visits. *See* AR 1074, 1613, 1633. Additionally, the record does not support the ALJ's claim that CNP Marcus's findings about Ms. Romero's motor strength have "been exactly the same for years." Again, while CNP Marcus often found that Ms. Romero had abnormal motor strength, on several visits she also found normal motor strength. *See* AR 947, 1074, 1094, 1161, 1191, 1480. Finally, it is true that, with one exception (AR 1074), CNP Marcus's physical examination notes in the "Constitutional" section

---

[6] CNP Marcus treated Ms. Romero since at least 2015, and the administrative record contains hundreds of pages of her treatment notes. The Court focused its review of CNP Marcus's treatment records to those close in time to the records cited by the ALJ.

consistently state that Ms. Romero is "chronically ill."  Though, this is not surprising given that CNP Marcus treated Ms. Romero for a number of chronic illnesses such as fibromyalgia (*see, e.g.,* AR 937, 1065, 1070, 1105, 1116, 1132, 1137, 1424, 1448, 1455, 1467), chronic back pain (*see, e.g.,* AR 937, 1065, 1070, 1080, 1105, 1116, 1132, 1137, 1407, 1416, 1424, 1448, 1455, 1467), and chronic endometritis (*see, e.g.,* AR 1100, 1105, 1111, 1116, 1122, 1127, 1132, 1407, 1416, 1455, 1467).  However, CNP Marcus routinely changed other sections in the "Constitutional" section of her findings, and there is no indication that she merely forgot to change the finding that Ms. Romero was "chronically ill" to something else.  For example, while CNP Marcus often noted that Ms. Romero "appeared healthy," there were several occasions where she did not indicate as such.  *See* AR 946, 1094, 1161, 1171, 1183, 1198, 1459, 1480.  And while CNP Marcus often found that Ms. Romero was in no acute distress, there were several occasions where CNP Marcus found her to be in "moderate distress" and/or "acutely ill."  *See* AR 946, 1094, 1171, 1183, 1190, 1198, 1203, 1480, 1613, 1633.  Given that the ALJ regularly changed the notes in the "Constitutional" section, and given that the ALJ regularly treated Ms. Romero for chronic illnesses, the records do not support the ALJ's claim that these case notes were "automatically propagated by a computer program" rather than documenting CNP Marcus's actual findings.  In supporting her claim that CNP Marcus's abnormal findings "have been exactly the same for years," the ALJ improperly picked and chose select evidence, *Carpenter*, 537 F.3d at 1265, and mischaracterized CNP Marcus's reports, *Bryant*, 753 F. App'x at 641.

  The second reason the ALJ gave for discounting CNP Marcus's findings is nonsensical.  The ALJ claims that CNP Marcus's repeated finding that Ms. Romero is "chronically ill" is "not consistent with those of other providers, who generally described her as appearing healthy and in

11

no acute distress." *See* AR 17.  However, "appearing healthy" and not being in "acute distress" do not conflict with also having a chronic illness.  Acute conditions are "severe and sudden in onset" whereas chronic conditions are "long-developing." *Acute vs. Chronic Conditions*, MEDLINE PLUS, https://medlineplus.gov/ency/imagepages/18126.htm (last visited Sept. 6, 2023).[7]  Indeed, CNP Marcus noted on numerous visits that Ms. Romero simultaneously appeared healthy, was in no acute distress (noted in the records as "NAD"), and was "chronically ill."[8] AR 936, 941, 954, 959, 1064, 1069, 1079, 1099, 1104, 1110, 1115, 1121, 1126, 1131, 1155, 1166, 1177, 1215, 1221, 1226, 1237, 1243, 1248, 1254, 1259, 1274, 1279, 1285, 1291, 1297, 1405, 1414, 1430, 1447, 1471, 1486, 1492–93, 1499, 1506, 1521, 1529, 1541, 1549, 1557, 1565, 1571, 1578, 1600, 1606, 1618, 1626, 1639, 1646, 1652–53.  CNP Marcus's assessment findings that Ms. Romero appeared healthy and was in no acute distress but was also chronically ill is *consistent* with "other providers" who also described Ms. Romero as in "no acute distress."  The ALJ discounted CNP Marcus's findings based on a conflict that does not exist.  The ALJ erred in discounting CNP Marcus's findings based on a misunderstanding or mischaracterization of the record evidence.  *Bryant*, 753 F. App'x at 641.

The Commissioner argues that the ALJ gave other reasons supported by substantial evidence for finding Ms. Romero less limited than she alleged.  Doc. 37 at 5–9.  The

---

[7] "Acute" is defined as:  "(1) characterized by sharpness or severity of sudden onset;  (2) having a sudden onset, sharp rise, and short course; (3) being, providing, or requiring short-term medical care (as for serious illness or traumatic injury); [or] (4) lasting a short time." *Acute*, MERRIAM WEBSTER, https://www.merriam-webster.com/dictionary/acute (last visited Sept. 6, 2023).  "Chronic" is defined as "(1) continuing or occurring again and again for a long time; [or] (2) suffering from a chronic disease."  *Chronic*, MERRIAM WEBSTER, https://www.merriam-webster.com/dictionary/chronic (last visited Sept. 6, 2023).

[8] Indeed, CNP Marcus noted that Ms. Romero appeared healthy, was in no acute distress, and was chronically ill on the three specific records cited by the ALJ— B28F/64-65 from March 2021 (AR 1405) ; B28F/312 from October 2019 (AR 1652–53); and B14F/8 from October 2017 (AR 936).  *See* AR 17.

12

Commissioner argues that Ms. Romero's claims of error connected to the ALJ's discussion of CNP Marcus's records are "nitpicking" and do not constitute a basis for remand. *Id*. at 8. In support of her argument, the Commissioner argues only that (1) the ALJ merely "suggest[ed]" rather than definitively found that treatment records were automatically propagated; and (2) the ALJ also discounted CNP Marcus's treatment records because CNP Marcus's records were "not consistent with those of other providers." *Id*. (quoting AR 17). These arguments lack merit. First, it is clear that the ALJ relied on the inference that CNP Marcus's findings were automatically propagated by a computer program. As discussed above, CNP Marcus's treatment records were not "exactly the same for years," as the ALJ described. AR 17. Further, the ALJ's comment that CNP Marcus's records may have been automatically propagated was half the basis provided by the ALJ for discounting Ms. Romero's extensive treatment history with CNP Marcus. As such, it is apparent that the ALJ relied significantly on this suggestion when disregarding CNP Marcus's records, even if the ALJ did not make an explicit finding of fact that the notations were computer-propagated. Second, and more importantly, the Commissioner does not address the fact that the ALJ mischaracterized or misrepresented CNP Marcus's treatment records.[9] Because the ALJ committed legal error, and because a proper analysis of the treatment records from CNP Marcus could affect the ALJ's analysis of Ms. Romero's symptoms, as well as the ALJ's determination of Ms. Romero's RFC, I recommend that the Court remand for proper consideration of CNP Marcus's treatment records.

---

[9] Both parties discuss CNP Marcus's treatment records in broad terms. Ms. Romero argues that evidence does not "support the inference that Ms. Marcus's treatment notes and findings are not based on contemporaneous physical examinations, that they are inaccurate, or were made in bad faith." Doc. 23 at 17. Given that Ms. Romero does not frame her argument as one of mischaracterization, the Court does not fault the Commissioner for not addressing the issue in these terms. In addressing the broader issue raised by Ms. Romero, however, the Court necessarily reaches this issue.

Finally, although neither side raises the issue, the Court notes a conflict within the ALJ's decision. In the last paragraph of the RFC analysis, the ALJ states that Ms. Romero "may need to alternate from standing to sitting every 45 minutes for 10 minutes while remaining at the workstation." AR 22. The ALJ did not include this limitation in the RFC. *See* AR 15. Whether Ms. Romero requires a sit/stand option could affect the outcome in this case. The vocational expert ("VE") testified that there were no sedentary jobs available with a sit/stand option. AR 82. At step five, the ALJ found that Ms. Romero could perform jobs that the VE characterized as sedentary without a sit/stand option: table worker, sorter, and final assembler. AR 23, 82–83. Because of its importance to the outcome in this case, on remand, the ALJ should clarify whether a sit/stand option is part of Ms. Romero's RFC.

> **b. The Administrative Record is now complete, and remand is not required due to the delay in filing the missing parts of the record.**

Ms. Romero argues that the ALJ cited an exhibit that was not included in the record (Exhibit B30F) and that this oversight requires remand. Doc. 23 at 17. The Commissioner filed a supplemental transcript containing the missing record. *See* Doc. 35. On the same day the supplemental transcript was filed, the Commissioner emailed plaintiff's counsel offering time to review the supplemental record and to confer about plaintiff filing a supplemental brief. Doc. 37 at 9 n.4. Ms. Romero did not respond to the Commissioner's email. *Id.* The Commissioner argues that the unintentional oversight did not harm Ms. Romero because Mr. Decker represented her at the administrative level and therefore had access to exhibit B30F while preparing her brief to this Court. *Id.* at 9–10.

Ms. Romero offers no reply to the Commissioner's claim that the oversight is harmless. *See* Doc. 38. Because the record is now complete, and because Ms. Romero shows no harm

from the delay in completing the record, I recommend that the Court find this issue is without merit and deny the motion as to this second issue.

## VI. Conclusion

For the reasons stated above, I find that the ALJ erred by failing to "meaningfully consider" the treatment records of her primary healthcare provider, CNP Marcus, in evaluating her symptom testimony. I find Ms. Romero's argument that the case should be remanded due to the delay in completing the administrative record is without merit. I recommend that the Court GRANT Plaintiff's Opposed Motion to Reverse or Remand (Doc. 23) IN PART, as to Ms. Romero's first issue, DENY the Motion as to the second issue, and remand this case to the Commissioner for further proceedings.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). Written objections must be both timely and specific.** *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, **73 F.3d 1057, 1060 (10th Cir. 1996). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. Failure to file timely and specific objections will result in waiver of** *de novo* **review by a district or appellate court.** *Id.* **In other words, if no objections are filed, no appellate review will be allowed.**

_____
JENNIFER M. ROZZONI
United States Magistrate Judge